51 CCPA
Application of Robert L. PEASLEE and Lester E. Oliphant.

Patent Appeal No. 7021.

United States Court of Customs and Patent Appeals.

Nov. 14, 1963.

Harness, Dickey & Pierce, Neal A. Waldrop, Detroit, Mich., for appellants.

Clarence W. Moore, Washington, D. C. (Raymond E. Martin, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

WORLEY, Chief Judge.

Peaslee and Oliphant appeal from the decision of the Board of Appeals which affirmed the examiner's rejection of claims 1, 3, 11 and 12 of their application[1] for a patent for brazing alloys. The board reversed the examiner's rejection of claims 2, 4 and 5.

Claims 1 and 3 are representative:

"1. A brazing alloy having a melting point in the range of about 1600°F.–1850°F. consisting essentially of about 3 to about 15% phosphorus, at least 50% nickel and an alloying ingredient selected from the group consisting of 1%–12% silicon, 2% to 20% chromium, 1% to 20% manganese and .5%–18% molybdenum and mixtures of any two of said alloying ingredients.

"3. An alloy in accordance with claim 1 wherein said alloying ingredient is chromium."

The application relates to nickel-base ternary and quaternary brazing alloys consisting essentially of nickel and 3% to 15% of phosphorus along with either 1% to 12% of silicon, 2% to 20% chromium, 1% to 20% of manganese or 0.5% to 18% molybdenum, or mixtures of any two of the last four metals. Appellants disclose that the alloys in issue possess a melting point in the range of 1600°F. to 1850°F., together with oxidation re-sistance and ductility characteristics allegedly superior to those of nickel-phosphorus alloys. Thus the new alloys are said to be superior to nickel-phosphorus alloys for brazing parts which will be subjected to corrosive and oxidizing atmospheres at elevated temperatures.

The references relied on are:

Boam et al. 2,714,760 August 9, 1955.
British Patent 487,263 June 17, 1938.

Boam discloses certain nickel-chromium-boron alloys for brazing corrosion-resistant, high temperature, alloys. A range of percentages disclosed is 65% to 85% nickel, 8% to 20% chromium and 2% to 5% boron with small amounts of iron, carbon and silicon described as un-essential.

The British patent relates to alloys for "soldering" refractory metals used in incandescent lamps, mercury rectifiers, and the like. The majority of the compositions are two component alloys having iron, nickel or cobalt as one component. The other component may be any of a number of materials including phosphorus and boron. A solder containing both iron and nickel alloyed with phosphorus, in proportions of 33% iron, 56% nickel and 11% phosphorus, is described as one of the most useful alloys and is said to be suitable where a relatively low melting point is required. The British patent includes a list of alloy compositions of iron, nickel or cobalt alloyed with molybdenum, chromium, phosphorus, arsenic or silicon, for example, as the second component, and sets out the melting points of the different compositions.

The board expressly agreed with the examiner that the substitution of phosphorus for boron in the alloys of Boam would be obvious to one skilled in the art. It based that conclusion on the ground that the British patent discloses that phosphorus is more effective than boron in reducing the melting point of nickel, noting that nickel-phosphorus alloys admittedly were well known and had been used for brazing parts to be subjected to

[1]. Serial No. 681,443, filed September 3, 1957.

oxidizing atmospheres. The board stated:

" * * * Because the alloy art is often an empirical art we think that there is sufficient suggestion in the prior art to substitute phosphorus for boron in the ternary alloys of Boam et al. if one desired an alloy with a lower melting point to overcome the difficulties encountered in the manufacture of honeycomb materials."

Although the examiner further suggested in the final rejection that chromium might added to the nickel-phosphorus alloys of the British patent without invention, that basis of rejection was not referred to by the board. Appellants point out that Boam discloses only boron-containing alloys and teaches that boron should diffuse with the base metal. They urge that the British patent, with a disclosure of fourteen metals which may be alloyed with the iron group metal component, at best represents only a basis for experimentation so far as substituting any of the alloying metals in Boam is concerned. Referring to the fact that the alloys of the British patent containing arsenic have the lowest melting point of all the alloys disclosed therein, appellants urge that the reference, if it suggests that anything be substituted, suggests arsenic.

Appellants' affidavit of a metallurgist employed by the assignee of the present application states that the claimed alloys have certain advantages over those of Boam. The affidavit includes a description of comparative tests of a commercial alloy of 13.5% chromium, 4.5% iron, 3.5% boron, 4.5% silicon, 0.8% carbon and the balance nickel, with a composition of the present invention, including 13% chromium, 10% phosphorus and the balance nickel. The latter alloy successfully brazed a honeycomb of a high melting point metal between two cover sheets of the same material at 1850°F. with no noticeable diffusion while the former alloy, at the recommended brazing temperature of 2150°F., diffused into the honeycomb so badly as to melt it down and additionally destroyed the planar nature of the cover sheets.

We do not agree with the board that the references show the claimed subject matter to be obvious. It seems to us that the claimed alloys are superior to the nickel-boron-chromium alloys of Boam for certain brazing operations where parts are to be subjected to corrosive and oxidizing atmospheres at elevated temperatures. Although the alloys of phosphorus with iron, cobalt and nickel listed in the British patent have a somewhat lower melting point than those in which boron is alloyed with the same base metals, it is noted that the former include 10½% to 11% of phosphorus while the latter include only 3.8% and 4% of boron. We doubt that one skilled in the art would find a valid reason in the references for assuming that the lower melting temperatures of the alloys containing phosphorus resulted from the mere substitution of phosphorus for boron rather than from the much greater quantity of phosphorus used. We do not find a clear suggestion in the British patent of substituting phosphorus in the nickel-chromium-boron of Boam much less a suggestion of substituting it in any particular proportion in that new environment.

We have considered the examiner's reference to Boam as suggesting the addition of chromium to the nickel-phosphorus alloys of the British patent but are not convinced from the record that it would be obvious to add chromium to those binary alloys to provide a ternary alloy meeting the limitations of the appealed claims.

It seems to us that the prior art does not fairly suggest doing what Peaslee and Oliphant have done. Granted that the alloy art is, as the board observed, often of an empirical nature, it does not necessarily follow that every experiment would be obvious to one of ordinary skill in the art.

The decision is reversed.

Reversed.